CINCINNATI, N. O. & T. P. RY. CO. v. SOUTH FORK COAL CO.

(Circuit Court of Appeals, Sixth Circuit.    June 21, 1905.)

No. 1,394.

1. RAILROADS—LIABILITY FOR LOSS BY NEGLIGENT FIRE—LUMBER STACKED· ON RIGHT OF WAY.

A railroad company is liable to the owner of lumber piled on its right of way with its consent for the loss of such lumber by fire occurring through its negligence in the operation of its trains, the measure of its obligation to avoid a negligent fire causing the destruction of the lumber being precisely the same as it would have been had the lumber been stacked near to, but off, its premises.

2. NEGLIGENCE—EVIDENCE TO ESTABLISH—PRESUMPTIONS.

Whether the happening of an injurious accident raises a presumption that it was due to negligence depends upon the nature of the accident and the surrounding circumstances which characterize it and the relation of the parties affecting the measure of care required from the one sought to be charged. While the mere happening of the injury does not raise such presumption, it may reasonably be ascribed to negligence if it was one not likely to occur if due care had been exercised.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 218.]

3. RAILROADS—LIABILITY FOR FIRES—EVIDENCE OF NEGLIGENCE.

A rear end collision occurred between two trains on defendant's railroad, one of which was following the other on the same track, in which a number of cars containing tanks of oil were telescoped by the rear engine. Sparks from the engine falling on the oil started a fire, which spread to and destroyed lumber owned by plaintiff, piled on the right of way some 40 or 50 feet from the track. *Held*, that proof of such facts raised a presumption that the collision was due to want of ordinary care in the operation of the trains, and in the absence of any evidence on the part of defendant showing the cause warranted a verdict against defendant for the loss.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was an action by the South Fork Coal Company, a corporation, which was operating a sawmill near Oneida, Tenn., for the loss by fire of a large quantity of lumber stacked upon the railway's right of way near its station at Oneida. The fire occurred October 23, 1902. The evidence tended to show that the lumber had been hauled from time to time from the mills of plaintiff and stacked on the right of way, several hundred feet from the station, but at a place customarily used for stacking lumber for shipment. On the night of October 23, 1902, there occurred a rear-end collision between two of the defendant company's freight trains at a point near this lumber. As a result certain cars containing tanks of oil were telescoped by the engine of the colliding train. The tanks were broken, and the escaping oil fired

by fire from the engine. The fire thus started was communicated to the adjacent lumber. The defendant offered no evidence in explanation of the collision or upon any other matter, and at conclusion of plaintiff's evidence asked a peremptory instruction in its favor. This was denied, and the case submitted to the jury upon a charge found in the record, who found for the plaintiff.

Edward Colston and Head & Anderson, for plaintiff in error.
James F. Baker and Jerome Templeton, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Under an exception to the refusal of the court to withdraw the case from the jury and an exception to the charge and for refusal to charge certain requests submitted, just two questions are made. The first is, would the railroad company be liable for a loss of the plaintiff's lumber by fire originating from a negligent collision between two of its trains? and, second, if that be conceded, was there prima facie evidence that the collision was the result of negligence in the management of its trains? The gravamen of the plaintiff's case is negligence, for the essential thing which it must establish is that its lumber has been lost through a negligent act of the railroad company. It must show that the negligent act of which it complains was the breach of some duty which, under the circumstances, was due to the plaintiff. Standard Oil Co. v. Murray, 119 Fed. 572, 575, 57 C. C. A. 1. What was the duty or obligation of the railroad company in respect of this lumber burned upon its right of way? It had not been delivered to the railroad company for carriage. Carrier liability is therefore out of the case. But it is not essential that contract relations shall exist in order to give rise to a duty by one to another. A duty may arise to one who is nothing more than a trespasser to use all reasonable exertion to avoid unnecessary injury after discovery of the peril. But, if the plaintiff was not a trespasser, the obligation of the railroad company to avoid injuring their property would stand upon a higher plane. There was evidence from which the jury might well find that the railroad company had consented that the plaintiff might stack its lumber upon its right of way, at the customary place for receiving lumber for shipment, and keep it there until it should desire or direct its shipment. The jury were told, if they found this to be so, that the railroad company would owe the plaintiff the duty of exercising reasonable care to avoid injury to its lumber by the operation of its trains. In contrast the defendant insisted that if the lumber was not placed upon the right of way for shipment, but to be kept there until the plaintiff could obtain a price satisfactory, the company would owe no duty "other than not to wantonly or willfully destroy or injure its lumber." This ignores all distinction between a rightful and wrongful use of the right of way, and puts the duty of the railroad company upon the same

139 F.—34

plane that it would have been if the plaintiffs had placed their lumber upon the railway premises without its knowledge or consent.

But there was evidence from which the jury could find, and, as matters now stand, from which they have found, that the railroad company assented to the use which was made of its right of way. If the company had assented to this use upon condition that the plaintiff should assume the dangers from sparks emitted from its engines, negligently or not, or from dangers incident to fire resulting from collision or otherwise, we are not prepared to say that the agreement would not have been valid, inasmuch as it was under no obligation to permit its premises to be so used, and might be unwilling to assume the risk incident to the proximity of the property to its tracks. Hartford Ins. Co. v. Chicago, etc., Ry. Co., 91 U. S. 99; Id., 36 U. S. App. 152, 70 Fed. 201, 17 C. C. A. 62; and Griswold v. I. C. Rd. Co., 90 Iowa, 265, 57 N. W. 843, 24 L. R. A. 647. But there is no pretense of any such agreement. The learned counsel for the railroad company have insisted that the mere fact that the plaintiff placed its lumber in such proximity to the railway track with knowledge of the danger of fire is an implied assumption of the risk of fire communicated from the engines of the company, and they have cited the cases of Post v. Buffalo & Western R. Co., 108 Pa. 585, and Railway Co. v. Bartlett, 69 Tex. 79, 6 S. W. 549. The Post Case was decided upon the ground of contributory negligence, and the conclusion much influenced by the fact that the plaintiff was a naked trespasser in so far as it had stacked a part of its lumber upon the right of way of the railroad company without the company's knowledge or consent. But the ground of the decision was that one who voluntarily places combustible property in such proximity to a railway, in time of great dryness, and where fires were of daily occurrence along the line of the road, attributed to sparks, was so grossly negligent as to be debarred of an action, although the company might have been negligent in the matter of proper spark arresters. Railway v. Bartlett went off upon the same ground, namely, that if one voluntarily places property in a situation of great danger his own negligence will prevent a recovery, although there may have been negligence in not properly guarding against the emission of sparks. The facts in both cases tending to show contributory negligence were very strong, and somewhat peculiar. It might be sufficient to pass over these cases without comment as not applicable here, inasmuch as the defense of contributory negligence is one to be affirmatively set up. No such plea was filed, and no question of contributory negligence was touched in the charge, or by any request which was made. In so far as either opinion rests upon the ground that the plaintiffs had placed inflammable property upon the premises of the railway company without its knowledge or consent, at a time of great danger from engine sparks, we are not prepared to say that the plaintiffs were so free from culpable negligence proximately contributory to the loss as to entitle them to recover for ordinary negligence. But in so far as the opinions go upon the theory that a plaintiff must lose his right of compensation for the negligent destruction

of his own property situated upon his own premises because he had exposed it to dangers which could come to it only through the negligence of the railroad company, they do not meet our approval. Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 473, 23 L. Ed. 356; Kellogg v. R. Co., 26 Wis. 223, 7 Am. Rep. 69; Fero v. The Buffalo, etc., R. Co., 22 N. Y. 209, 215, 78 Am. Dec. 178; Burke v. R. R., 7 Heisk. 451, 464, 19 Am. Rep. 618. The rights of persons to the use and enjoyment of their own property are held upon no such tenure as this. The principle would forbid the use of property for many purposes if in such proximity to a railroad track as to expose it to dangers attributable to the negligent management of its business. Upon principle the case is not different if one places his property upon the premises of a railroad company without conditions, and with its assent. If he is not a trespasser, he is not beyond the protection of the law against injury due to the want of ordinary care. In Railroad Co. v. Richardson, 91 U. S. 454, 23 L. Ed. 356, the Supreme Court, and in Ann Arbor R. Co. v. Fox, 92 Fed. 494, 497, 34 C. C. A. 497, 500, this court, speaking by Judge Taft, held that the statutory liability of a railway company for fire communicated by sparks was not affected by the fact that the property burned was in part situated upon the railway right of way, by consent of the railway company. After saying that the risk of fire might be increased Judge Taft said:

"But the relation of the parties to the risk and danger is just the same. It is an additional risk for each, but the loss must fall just where it would have fallen had a greater distance between the lumber and track been maintained; for they voluntarily assumed the burden from the increased danger."

By the ancient common law every man was obliged to keep his fire safe, and if one was started upon his premises by the act of himself or any one for whom he was responsible, and spread and injured his neighbor, except by some inevitable accident which could not have been foreseen, he was responsible without regard to the question of negligent origin. In 1 Bacon's Abridgment, title "Action on the Case," F, at page 85 (1st Am. Ed. of 1811), it is said:

"It was formerly holden that if a fire broke out accidentally in a man's house, and raged to that degree as to burn his neighbor's, that he in whose house the fire first happened was liable to an action on the case on the general custom of the realm quod quilibet ignem salve."

But the same author states that by the statute of 6 Anne, c. 31, it was provided the action should not lie if accidentally begun. See, also, Rolle's Ab. "Action on the Case," B, tit. "Fire," and 2 Shearman & Redfield on Negligence, §§ 665, 666; and St. Louis, etc., Ry. Co. v. Matthews, 165 U. S. 1, 5, 15, 17 Sup. Ct. 243, 41 L. Ed. 611. This statute of Anne constitutes a part of the common law of most of the states, and thus, when the matter is not the subject of regulation by state statute, the liability at common law is confined to a fire which was started through culpable negligence, which spreads and destroys property adjacent. Shearman & Redfield on Negligence, § 665, and cases cited. We conclude, therefore, that the railroad company is liable to the plaintiff for the loss

of its lumber, if same was stacked upon its premises with its consent, and was burned by a fire negligently started by itself upon its own premises. The measure of its obligation to avoid a negligent fire spreading to this lumber upon its own right of way is precisely the same as it would have been if it had been stacked near to, but off, its right of way.

That the fire, which was started by a collision between two railway freight trains, spread to plaintiff's lumber and consumed same, is beyond dispute. If that collision was a negligent one, it was the proximate cause of the destruction of plaintiff's property. There was no independent intervening cause. But did the unexplained and undisputed facts in respect of this collision make a prima facie case of negligence? The contention now is that there was no evidence from which an inference of negligence could be drawn, and that the court erred in not directing a verdict for the defendant upon this ground, and also erred in saying to the jury that the evidence, in the absence of any explanation of the cause of the collision, would constitute prima facie evidence of negligence. The argument pressed upon is that "there is no physical law that says that the collision of two freight trains, one following the other on the same track, may not occur from sheer accident." Counsel then suggest a number of ways in which such a collision might occur without want of ordinary care. All this may be conceded without advancing the argument, for the simple question we have here is whether, from evidence of certain facts, the inference of negligence, in the absence of explanation, may be logically and legally drawn. That the plaintiff's case must stand upon the ground of negligence is clear. That negligence is an affirmative fact to be shown by him who alleges it must also be conceded. Neither can it be denied, until the contrary appears, that there is a general presumption that a railroad company, in the conduct of a lawful business upon its own premises, will exercise due care. The question is not whether such a collision may not have occurred without culpable negligence, but whether, in the particular case, the circumstances do not raise a presumption that it was due to the want of ordinary care. In other words, does not the very nature of the catastrophe itself supply evidence of negligence? It is not necessary to go so far as to say that evidence of the happening of an injury always affords evidence of negligence even in a passenger case. The inference justifiably to be drawn must depend upon the particular situation shown by the evidence from which or by which it is sought to make a prima facie case of negligence.

Take the facts of this case. Two trains following each other upon the same track, both under the management of the same company, come into such violent collision as to cause the rear engine to telescope a number of cars at the rear end of the forward train. Fire escaping from the engine fires the wreck, and the fire thus started spreads, and consumes plaintiff's property 40 or 50 feet away. According to all human experience, such a collision cannot occur without something abnormal. It may be that that

abnormal cause may be one for which the defendant may not be legally liable, but the question is whether the burden of showing this to be the fact is not legally shifted to the defendant by evidence showing a state of things most unlikely to occur unless caused by the absence of due care. It cannot be unreasonable to ascribe to negligence the happening of a catastrophe, which was not likely to occur if due care had been exercised, until the cause is explained by other evidence. If, therefore, the nature of the accident is such as to make it altogether probable that it was caused by negligence, it makes a case which falls within the maxim res ipsa loquitur. Manifestly, a presumption of negligence does not arise upon mere evidence of an injury sustained. The inference logically as well as legally deducible is necessarily dependent upon the nature of the accident, the surrounding circumstances which characterize it, and the relation of the parties. 21 Am. & Eng. Ency. of Law, 521. Many accidents do not speak for themselves. The maxim res ipsa loquitur does not, therefore, apply when the circumstances in evidence are of doubtful solution. That there should not be uniformity of opinion as to the applicability of the maxim is due not only to the infinite variety of circumstances under which injuries are inflicted, but to differences in respect of the standard of diligence applicable in different situations. In cases between passengers and carriers it has been most often applied, and sometimes in such sweeping terms as suggest application only to an action for breach of contract, rather than one grounded upon tort. Thus Mr. Justice Lamar in Gleeson v. Midland Rd. Co., 140 U. S. 435, 443, 11 Sup. Ct. 859, 862, 35 L. Ed. 458, says:

"Since the decisions in Stokes v. Sattonstall, 13 Pet. 181, 10 L. Ed. 115, and Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 877, it has been settled law in this court that the happening of an injurious accident is in passenger cases prima facie evidence of negligence on the part of the carrier, and that (the passenger being himself in the exercise of due care) the burden then rests upon the carrier to show that its whole duty was performed, and that the injury was unavoidable by human foresight."

Now, it is clear that the learned justice did not mean that a presumption of negligence would arise upon mere proof of injury to a passenger, without any regard to the nature of the injury or the circumstances connecting the carrier with its infliction. Neither of the cases referred to by the learned justice, nor the one in which his observation was made, involved any question of the presumption of negligence from mere proof of an injury to a passenger, and it is not likely, as such actions stand upon the ground of negligence, that negligence would be inferred from nothing more than evidence that a passenger sustained an injury while upon his journey. The evidence should go further, and at least show that the carrier was connected with the cause of his injury. In other words, the presumption is one which arises not from the mere naked fact of an injury, but from the circumstances which characterize the injury. Thus, in Stokes v. Sattonstall the prima facie case of negligence was made upon evidence that the stage coach was upset, and the plaintiff injured. The fact that the coach was overturned while

being driven by the carrier's servant, and a passenger injured, was evidence of the happening of a thing which does not happen under normal conditions, and made a case which required explanation.

In Railroad v. Pollard there was evidence tending to show that Mrs. Pollard, by a sudden and unusual jolt, had been thrown against the arm of a seat and injured. In Gleeson v. Virginia R. Co. a railway postal clerk was injured through a partial derailment of the train in consequence of coming in contact with a landslide. From the higher measure of care required from a carrier of passengers a presumption of negligence may arise from evidence which would not be sufficient in other relations. But in principle there can be no difference between such cases and those in which a less degree of care is required for the exoneration of the party sued. In each action for a tortious injury the question as to what evidence will make a prima facie case of negligence and require an explanation from the defendant will depend upon the nature and circumstances of the injury and the measure of care due from the defendant. In passenger cases, as in other cases, the question at last is whether an inference of negligence may be logically inferred from the circumstances of the particular injury. Penn. R. Co. v. MacKinney, 124 Pa. 462, 17 Atl. 14, 2 L. R. A. 820, 10 Am. St. Rep. 601; Holbrook v. Utica, etc., R. Co., 12 N. Y. 236, 64 Am. Dec. 502; Seybolt v. L. E. R. Co., 95 N. Y. 562, 47 Am. Rep. 75; Railroad v. Mitchell, 11 Heisk. 400; Sommers v. R. Co., 7 Lea, 201; Donovan v. Hartford R. Co., 65 Conn. 201, 32 Atl. 350, 29 L. R. A. 297; Yarnell v. K. C. Ry. Co., 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599; Bonce v. Dubuque R. Co., 53 Iowa, 278, 5 N. W. 177, 36 Am. Rep. 221; Birmingham R. Co. v. Hale, 90 Ala. 8, 8 South. 86, 24 Am. St. Rep. 748; Feital v. Middlesex R. Co., 109 Mass. 398, 12 Am. Rep. 720; Corpue v. London Ry. Co., 5 Q. B. 747. Thus a railroad is bound to use care to keep its track clear. An accident resulting from some obstruction upon the track is prima facie evidence that the obstruction was due to negligence. Shearman & Redfield on Negligence, § 516. The mere fact of a collision between two trains has always been held, in suits by passengers, prima facie evidence of negligence. S. & R. on Neg. § 516; Iron R. Co. v. Mowery, 36 Ohio St. 418, 38 Am. Rep. 597; Clark v. Chicago R. Co., 127 Mo. 197, 29 S. W. 1013; Smith v. N. Y. R. Co., 46 N. J. Law, 7; North Chicago R. Co. v. Cotton, 140 Ill. 486, 29 N. E. 899; Little Rock Ry. Co. v. Harrell, 58 Ark. 454, 25 S. W. 117. So an injury resulting from derailment of a train is prima facie evidence of negligence, or the fall of a bridge, or the breaking of machinery. S. & R. Neg. § 516, and cases cited. The opening of a railway carriage door upon slight pressure, whereby the plaintiff was thrown out, was held prima facie evidence of negligent construction of the door. Gee v. Metropolitan Ry., L. R. 8 Q. B. 161, 175. But this presumption of negligence from the nature of an injury is one which has been applied in many other kinds of action grounded upon negligence.

The case of the Inland and Seaboard Coasting Co. v. Tolson, 139

U. S. 551, 555, 11 Sup. Ct. 653, 654, 35 L. Ed. 270, was an action by a wharfinger against a steamboat company for crushing his foot between the timbers of a wharf by the violent striking of a steamboat against the wharf while touching to receive freight from him. The court said:

"As such damage to a wharf is not ordinarily done by a steamboat under control of the officers and carefully managed by them, evidence that such damage was done in this case was prima facie evidence, and, if unexplained, sufficient evidence of the negligence on their part, and the jury might properly be so instructed."

In Kearney v. London & Ry. L. R. 6 Q. B. 759, a brick fell out of a pier of a railway bridge, without any assignable cause except the slight vibration of a passing train, and injured the plaintiff upon a highway passing under. Held evidence of negligence.

In Byrne v. Boadle, 2 Hurt. & Culb. 721, 726, the plaintiff was walking in a public street past the defendant's shops, when a barrel of flour fell upon him from a window above the shop. Held sufficient prima facie evidence of negligence to cast upon the defendant the burden of showing that the accident was not due to negligence. Pollock, C. B., said:

"The learned counsel was quite right in saying that there are many accidents from which no presumption of negligence can arise, but I think it would be wrong to lay down as a rule that in no case can a presumption of negligence arise from the facts of an accident. Suppose in this case the barrel had rolled out of the warehouse, and fallen on the plaintiff, how could he possibly ascertain from what cause it occurred? It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford prima facie evidence of negligence. A barrel could not roll out of a warehouse without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous. So in the building or repairing a house, or putting pots on chimneys, if a person passing along the road is injured by something falling upon him, I think the accident alone would be prima facie evidence of negligence. Or if an article calculated to cause damage is put in a wrong place, and does mischief, I think that those whose duty it was to put it in the right place are prima facie responsible, and, if there is any state of facts to rebut the presumption of negligence, they must prove them. The present case upon the evidence comes to this: A man is passing in the front of the premises of a dealer in flour, and there falls down upon him a barrel of flour. I think it apparent that the barrel was in the custody of the defendant, who occupied the premises, and who is responsible for the acts of his servants who had the control of it; and in my opinion the facts of its falling is prima facie evidence of negligence, and the plaintiff, who was injured by it, is not bound to show that it could not fall without negligence; but if there are any facts inconsistent with negligence it is for the defendant to prove them."

In Scott v. The London Docks Co., 3 Hurl. & Colt, 596, 600, plaintiff, while passing in front of a warehouse in the dock, in discharge of his duty as a customs collector, was injured by bags of sugar falling upon him which were being lowered from above. An effort was made by counsel to distinguish the case from Byrne v. Boadle, cited above, because the place where the accident occurred was not, as there, a public highway, but a dock, the property of the company. Held evidence of negligence; Erle, C. J., saying:

"There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of the explanation by the defendants, that the accident arose from want of care."

To same effect is the able opinion of Judge Morrow in The Joseph B. Thomas (D. C.) 81 Fed. 578.

In the case of The William Branfont, 52 Fed. 390, 394, 3 C. C. A. 155, the rule of evidence applied in Coasting Co. v. Tolson, 139 U. S. 552, 554, 11 Sup. Ct. 653, 35 L. Ed. 270, and cited heretofore, was applied to a case of where a stevedore was injured by the fall of a stanchion. The opinion was by Fuller, C. J., who, in affirming the judgment of the District Judge, said:

"It is plain that in his judgment a prima facie case was made out, not simply from the mere happening of the accident, but because the surrounding circumstances raised the presumption that it happened in consequence of a failure of duty on the part of libelee. Undoubtedly there are cases where the very nature of an accident has been held of itself to supply the proof of negligence, but the conclusion was not rested on the mere naked, isolated fact of injury. The presumption of negligence was drawn from the fact of the injury, coupled with the circumstances surrounding its infliction, and characterizing the nature of the occurrence as attributable to want of the requisite care, or as demanding an explanation which the defendant alone could furnish."

It has been said that in action by employés for negligence injuries evidence of an accident carries with it no presumption of negligence. Ill. Cent. R. Co. v. Coughlin, 132 Fed. 801, 65 C. C. A. 101; Patton v. T. P. R. Co., 179 U. S. 663, 21 Sup. Ct. 275, 45 L. Ed. 361; T. & P. R. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136. The reason is the peculiar contract of such an employé by which he assumes the risks incident to his employment, including the negligence of his fellow servants. He must therefore show that the injury of which he complains was the result of a risk he did not assume. It is also said that the explosion of a boiler does not afford prima facie evidence of negligence. For this the cases of T. & P. Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136, Huff v. Austin, 46 Ohio St. 386, 21 N. E. 864, 15 Am. St. Rep. 613, Cosulich v. Standard Oil Co., 122 N. Y. 118, 25 N. E. 259, 19 Am. St. Rep. 475, and Marshall v. Welwood, 38 N. J. Law, 339, 20 Am. Dec. 394, are cited. The case of the T. & P. Ry. Co. v. Barrett was a suit by an employé, and for reasons stated above is not in point. Marshall v. Welwood follows Losee v. Buchanan, 51 N. Y. 476, 10 Am. Rep. 623, in simply holding that there is no absolute responsibility for the consequences of the bursting of a boiler, and that there must be evidence of some negligence to sustain a recovery. Neither case involved the question as to whether evidence of the fact that a boiler had exploded supplied evidence of negligence in the absence of explanation. Cosulich v. Standard Oil Co. was the case of the explosion of a tank of oil in a coal oil refinery. Starting from the proposition that mere proof that fire had spread from the premises of one to those of another does not afford prima facie evidence of a negligent origin, the court held that evidence

that it had started from the explosion of a tank of oil in process of distillation in a manufacturing establishment did not point to negligence or carelessness. Huff v. Austin does squarely hold that the explosion of an ordinary steam boiler does not make a prima facie case of negligence. An opposite conclusion was reached by the Tennessee Supreme Court in Young v. Bransford, 12 Lea, 232, 241, where the question was considered in a careful opinion by Judge Cooper. In that case it was said:

"The fact that there was an explosion, which is not an ordinary incident of the use of a steam boiler, ought to have some weight, inasmuch as it may be out of the power of the aggrieved party in some instances to prove any more. The reasonable rule would seem to be that laid down by Judge Wallace as above, 'that from the mere fact of an explosion it is competent for the jury to infer as a proposition of fact that there was some negligence in the management of the boiler or some defect in its condition.' "

To same effect is Rose v. Transportation Co., 20 Blatchf. 411, 11 Fed. 438.

The presumption from evidence of a fire started by sparks from a railway engine is in many states determined by statute. But at the common law a prima facie case of negligence is not made out by mere evidence that it was started by sparks from a railway engine. The use of such engine being sanctioned by statute, there is no liability for a fire started from sparks unless the sparks were negligently suffered to escape. The ground of action being, therefore, for the negligent escape of sparks, a case is not made out by mere proof that it was started by sparks in view of the fact that some sparks will escape despite the use of appliances to arrest them. Garrett v. Southern Ry. Co., 101 Fed. 102, 41 C. C. A. 237, 49 L. R. A. 645; 13 Am. & Eng. Ency. Law, 507, 508, and cases cited in notes. But evidence of escape of larger sparks than usual, or an unusual number of sparks, has been held prima facie evidence of want of due care. Field v. N. Y. Cent. R., 32 N. Y. 339, 345; Mo. Pac. Ry. Co. v. Texas, etc., Ry. Co. (C. C.) 41 Fed. 917; Fitch v. Pac. Ry. Co., 45 Mo. 322; Henderson v. R. Co., 144 Pa. 461, 22 Atl. 851, 16 L. R. A. 299, 27 Am. St. Rep. 652. There are, however, many jurisdictions in which the mere fact of fire started by sparks is held, irrespective of statute, to be prima facie evidence of negligence. The cases may be seen in 13 Am. & Eng. Ency. Law, p. 498 et seq., and notes.

But where the character of the accident is such as to strongly point to a cause which is abnormal and negligent, it devolves upon the defendant to explain that that abnormal cause was not due to want of due care. Thus in Memphis Electric Lighting Co. v. Letson (C. C. A.) 135 Fed. 969, we held that a prima facie case of negligence was made out upon evidence that the intestate received a fatal current of electricity when turning on an ordinary electric lamp, the current being supplied for lighting purposes by the defendant.

It is useless to multiply examples of the proper application of the presumptions arising from the circumstances of a particular acci-

dent. The court below tried the case carefully, and submitted the matters at issue under a sound charge, and the judgment must be affirmed.