FARMERS SAVINGS BANK, Appellant, v. W. J. NEWTON and LEOTA NEWTON, Appellees.

**Contracts:** STATUTE OF FRAUDS: EVIDENCE. Oral evidence is competent to show delivery of property under a parol contract of sale, for the purpose of taking the contract out of the statute of frauds.

**Same.** The contents of a lost memorandum made by the purchaser of property and delivered to the seller, showing the character, amount and value of the property sold under an oral contract is competent on the question of sale and delivery.

**Same:** STATUTE OF FRAUDS: PERFORMANCE. Where the buyer of cattle purchased standing feed under an oral contract and then

turned the cattle into the field there was such a delivery of the feed as to satisfy the statute of frauds.

**Sale of mortgaged chattels:** APPLICATION OF PAYMENTS. The holder of several notes secured by chattel mortgages may apply the proceeds of the mortgaged property to the payment of the notes secured by the respective mortgages, in the absence of any direction by the maker to make a different application.

**Same:** INSTRUCTIONS. Where the defendant in a suit upon certain notes claimed credits arising from a sale of property covered by mortgages, and notes not in suit were offered in evidence showing proper credit for the proceeds of such sales, an instruction authorizing the jury to disregard the credits on the notes as made and permitting them to assume that the proceeds of the sales had been credited on the notes in suit, was erroneous.

**Same:** ERRONEOUS INSTRUCTIONS: PRESUMPTION. Where the evidence was such that under proper instructions the jury might have returned a verdict for the plaintiff, erroneous instructions resulting in a verdict for defendant must be deemed prejudicial; and to avoid the presumption of prejudice it must appear that under proper instructions the verdict could not have been otherwise.

*Appeal from Lyon District Court.*—HON. JOHN F. OLIVER, Judge.

THURSDAY, FEBRUARY 8, 1912.

THREE actions, the first by this plaintiff to replevin chattel property alleged to be covered by a mortgage, the second by plaintiff in equity to foreclose chattel mortgages, and the third by defendants to recover an alleged balance due on account, were by agreement consolidated in the lower court, and tried to a jury under a stipulation that the issues between the parties were, first, whether the amounts due and owing on certain promissory notes had been paid by defendants either in money or by property turned over to plaintiff, the value of which was credited upon the indebtedness represented by such notes, and, if not paid in full, the amount that the defendants were entitled to credit for by reason of any payments so made;

and, second, whether defendants were entitled to recover on certain items of counterclaim in excess of the amount, if any, due upon the notes in question. There was a general verdict for defendants, and plaintiff appeals.—*Reversed.*

*E. C. Roach,* for appellant.

*Simon Fisher,* for appellees.

DEEMER, J.—There was no controversy as to the validity of the eight promissory notes held by plaintiff against defendants described in plaintiff's substituted petition filed as a result of the stipulation consolidating the three actions.

The questions submitted to the jury were wholly as to various credits which defendants claimed should have been made on said notes and on defendants' counterclaim for the recovery of payments made to or credits allowed by plaintiff in excess of the amount due on said notes. On both branches of the case the burden was on the defendants.

I. Defendants claim credit for $1,800, the purchase price of ninety-four head of cattle at $20 per head, alleged to have been sold by defendants to plaintiff, and for twelve acres of millet of the reasonable market value of $200, also alleged to have been sold and delivered by defendants to plaintiff, and consumed in the feeding of said cattle. With reference to these items the plaintiff denied any contract of sale, and introduced evidence tending to show that the only credit to which defendants were entitled with reference to the cattle was $886, the amount for which the cattle had been actually sold by defendants, the proceeds of such sale having been turned over to plaintiff.

On this issue the contention for plaintiff is that the testimony of the defendants with reference to an oral

agreement of sale was inadmissible, inasmuch as there was no delivery to plaintiff and no part pay-

**1. CONTRACTS: statute of frauds: evidence.** ment of the purchase price. If the testimony of defendants was accepted by the jury as true, then there was not only an oral agreement of sale, but a completed delivery passing title; and clearly such a transaction may be proved by parol evidence. There can be no doubt with reference to the competency of parol evidence to prove delivery of property for the purpose of establishing a sale which under the statute of frauds would be rendered valid and effectual by such delivery. *Brown v. Wade,* 42 Iowa, 647; *Remick v. Sandford,* 120 Mass. 309; Brown, Statute of Frauds, section 316-a *et seq.* Therefore, as bearing on the question of delivery, the testimony of defendants was admissible, and there is no claim for appellant that the issue relating to the delivery was not properly submitted to the jury.

For the same reason, evidence as to a memorandum made by plaintiff cashier on a slip of paper shown to have been lost indicating the number of cattle, the price per

**2. SAME.** head, and the aggregate amount of $1,880, and delivered to defendants was admissible as bearing on the question whether or not there was a completed sale and delivery of the cattle to the plaintiff. *Nagle v. Fulmer,* 98 Iowa, 585.

With reference to the millet, the testimony of the defendants was that, after the purchase of the cattle by plaintiff, they were by plaintiff's direction turned into the

**3. SAME: statute of frauds: performance.** field of millet, and there fed upon the millet until they were shipped to market under an arrangement made by plaintiff. If this testimony was true, then there was sufficient delivery of the millet to the plaintiff to complete a sale thereof and to render plaintiff liable for its reasonable value.

II. There were eight notes in suit, although plain-

tiff held four more, which it introduced. in evidence, and which showed credits indorsed thereon by the plaintiff, which arose out of the sale of the cattle and of some mules which plaintiff also sold. Of these four notes not in suit, two amounting to something over $1,000, were known as cattle notes; that is to say, they were notes secured by chattel mortgage upon the cattle which were sold by the plaintiff. There was a third cattle note amounting to $688, which was in suit. There were also two notes held by plaintiff which were secured by mortgage upon the mules for which defendant claimed credit. One of these amounting to $403.90 was of the eight in suit and another amounting to $300 was not in suit. Plaintiff admitted that it had received from defendant the sum of $886 from the cattle, and further pleaded "that at the time the cattle which were covered by the mortgages were sold the plaintiff held against the defendants other notes than the notes in suit which had been secured by the mortgages on the cattle, and that the proceeds of the cattle, $886, had been credited on the notes where it should apply, and further alleging that the proceeds of the mules and horses and cows had been properly applied on the notes not in suit, which were secured by the mortgages on the cattle, mules, horses, and cows." The evidence tended to show that of the amounts which plaintiff admitted it received it credited upon the $300 note secured by mortgage upon the mules from the proceeds of the sale thereof the amount necessary to extinguish it, and that from the proceeds of the sale of the cattle it made credits upon the notes not in suit which were secured by mortgage upon the cattle. As defendant gave no direction whatever as to the application of credits, plaintiff had the right to make them as it did upon the notes secured by mortgage upon the property which was sold and from which the money was derived.

4. SALE OF MORT-GAGED CHATTELS: application of payments.

Notwithstanding the issues presented by the pleadings and the testimony to which we have referred, the trial court in its fourth and other instructions told the jury, in effect, that plaintiff had already credited upon the eight notes in suit the sum of $886, and that, if it found that defendants were entitled to further credits, they should be taken from the balance due on the notes in suit after deducting the $886 already applied.  The notes not in suit were introduced in evidence, but in its instructions the court evidently overlooked the fact that credits had already been made thereon, which credits it is practically admitted were properly applied, and erroneously instructed that these credits were upon the notes in suit, and that against whatever balance it might find due on the notes in suit with the credits then appearing thereon there should also be credited whatever sum in addition to the $886 the testimony showed defendants were entitled to.

*5. SAME: instructions.*

If the jury followed these instructions, as we must presume it did, the credits properly made by plaintiff upon the notes not in suit were entirely disregarded, and they were again credited to defendants upon the notes which were involved in the action.  The error of the court was in assuming or in permitting the jury to assume that the $886 which plaintiff admitted it had received from defendants was credited by it upon the notes in suit, where as the major part of it was properly credited upon notes not in suit.

Appellees seek to justify the instruction upon two theories:

First.  Upon a stipulation filed in the case which it is claimed narrowed the issues down to credits upon the notes in suit, instead of all the notes held by plaintiff against the defendants.  The stipulation as we read it did not so limit the issues.  It is not necessary to set it out; for it did not limit the issues tendered by the plead-

ings, and did not eliminate the notes not in suit as a basis for computation.

Second. It is contended that the verdict is right under the testimony; for the reason that, if plaintiff's contention be conceded, the result could not have been otherwise. The total credits allowed by the jury to the defendants was $3,386.40, and it is insisted that their total indebtedness to the plaintiff did not equal this sum. A careful consideration of the testimony does not justify this latter conclusion. In computing defendant's indebtedness, no interest is allowed to the bank upon the notes held by it. If interest be allowed and added to the principal, it would appear that there should have been a verdict for the plaintiff in some amount under the issues tendered.

6. SAME: erroneous instructions: presumption.

Again, there were some other notes held by plaintiff which we have not hitherto referred to amounting to $200. Adding these with interest on all the notes to the principal sum, there might under the testimony have been a verdict for the plaintiff for something like $150. It is not necessary in this connection to say that this should have been the verdict. It is enough to show that under proper instructions there might have been a verdict for the plaintiff. Defendants are here laboring under the heavy burden of showing that under the undisputed facts as applied to proper instructions the verdict could not have been other than was returned. That they have not met this burden is apparent.

For the error pointed out the judgment must be, and it is, *reversed.*